**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 5, 2017**

# In the Court of Appeals of Georgia

A17A0452. CITY OF SANDY SPRINGS BOARD OF APPEALS et al. v. TRATON HOMES, LLC.

DILLARD, Presiding Judge.

The City of Sandy Springs Board of Appeals and members of the Board[1] (collectively, "the Board") filed this interlocutory appeal to the superior court's denial of a motion to dismiss Traton Homes, LLC's petition for writ of certiorari. The Board maintains that the trial court erred in denying its motion to dismiss when Traton Homes failed to (1) meet the mandatory requirements of OCGA § 5-4-6 (b) for service of the certiorari petition and writ on the Board as the respondent and (2) name the City of Sandy Springs as the opposite party and, thus, separately failed to meet the mandatory requirements of OCGA § 5-4-6 (b) with regard to service upon an opposite

---

[1] The individually named members are Ted Sandler, Melissa Nodvin, Ron Carpinella, Colin Lichtenstein, Ken Moller, Alvin Johnson, and Eric Johnson.

party. Because we agree that Traton Homes failed to satisfy these mandatory statutory requirements, we reverse.

The record reflects that on December 11, 2015, Traton Homes filed a petition for writ of certiorari in superior court, seeking to appeal the City of Sandy Springs Board of Appeals's decision to affirm a zoning interpretation that had been made by the community development director for the City of Sandy Springs. The superior court subsequently entered an "Order Sanctioning Petition for Certiorari and Directing Service." Also on that day, the court issued summonses to the named respondents in certiorari, to wit, the Board and its members.

On January 19, 2016, the Board filed a special appearance and responsive pleading to the petition, asserting that a writ had never been issued; the writ had therefore not been properly served; and Traton Homes had not named the City of Sandy Springs ("the City"), the opposite party, as a defendant, and thus had not served the petition or writ on the City. On the same day, the Board also moved to dismiss the petition for these reasons. Traton Homes responded, maintaining that the court's order sanctioning the filing *was* the writ; that alternatively, the summonses issued by the clerk of court were tantamount to the required writ; and that, in any event, it was the clerk of court's duty to issue the writ, not the petitioner's. Traton

Homes also argued that its failure to name the City as a defendant was not fatal to its petition, and it filed an amended petition to that effect, citing OCGA § 5-4-10 as authority for doing so.[2] Finally, Traton Homes contended that by serving counsel for the City within five days of filing its original petition, the City *had* been properly served. But the Board replied, countering that the summonses were not tantamount to the required writ, and that the City could not be added as a party through an amendment. The trial court summarily denied the motion and then issued a certificate of immediate review. The Board's application for an interlocutory appeal followed, which we granted.

At the outset, we note that if a motion to dismiss for lack of jurisdiction is "decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard."[3] And as for motions to dismiss for insufficient service, a trial court's ruling "will be upheld on appeal absent a showing of an abuse

---

[2] OCGA § 5-4-10 provides that "[c]ertiorari proceedings shall be amendable at any stage, as to matters of form or substance, as to the petition, bond, answer, and traverse; and a valid bond may by amendment be substituted for a void bond or no bond at all."

[3] *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990); *accord Scovill Fasteners, Inc. v. Sure-Snap Corp.*, 207 Ga. App. 539, 540 (428 SE2d 435) (1993).

3

of discretion."[4] Of course, when an appeal from the denial of a motion to dismiss presents a question of law, we review the trial court's decision *de novo*.[5] With these guiding principles in mind, we turn now to the Board's contentions on appeal.

1. First, the Board argues that the trial court erred in denying the motion to dismiss when Traton Homes failed to meet the mandatory requirements of OCGA § 5-4-6 (b) for service of the certiorari petition and writ upon the Board. We agree.

Following the 1966 Civil Practice Act, "certiorari proceedings are considered 'special statutory proceedings[,]'" which are proceedings "to which the Civil Practice Act applies 'except to the extent that specific rules of practice and procedure in conflict . . . are expressly prescribed by law.'"[6] And turning to the certiorari-

---

[4] *Woodyard v. Jones*, 285 Ga. App. 323, 323 (646 SE2d 306) (2007).

[5] *See Atlanta Women's Health Group, P.C. v. Clemons*, 299 Ga. App. 102, 102 (681 SE2d 754) (2009) ("This appeal presents a question of law, which we review de novo."); *In the Interest of P. N.*, 291 Ga. App. 512, 512 (662 SE2d 287) (2008) (same).

[6] *Hudson v. Watkins*, 225 Ga. App. 455, 456 (484 SE2d 24) (1997) (punctuation omitted); *see* OCGA § 9-11-81 ("This chapter shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law; but, in any event, the provisions of this chapter governing the sufficiency of pleadings, defenses, amendments, counterclaims, cross-claims, third-party practice, joinder of parties and causes, making parties, discovery and depositions, interpleader, intervention, evidence, motions, summary judgment, relief from judgments, and the effect of judgments shall

4

proceedings statute relevant to this appeal, we are mindful that in considering the

meaning of a statute, our charge as an appellate court is to "presume that the General

Assembly meant what it said and said what it meant."[7] Toward that end, we must

afford the statutory text its plain and ordinary meaning,[8] consider the text

contextually,[9] read the text "in its most natural and reasonable way, as an ordinary

speaker of the English language would,"[10] and seek to "avoid a construction that

apply to all such proceedings.").

[7] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation and citation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[8] *Deal*, 294 Ga. at 172 (1) (a); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013).

[9] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___, ___ (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("The common and customary usages of the words are important, but so is their context." (punctuation omitted)).

[10] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013).

makes some language mere surplusage."[11] In summary, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[12]

Turning to the statutes in question, under OCGA § 5-4-3, whenever any party in a case brought "before any inferior judicatory or before any person exercising judicial powers" is dissatisfied with the ultimate decision or judgment, that party "may apply for and obtain a writ of certiorari by petition to the superior court for the county in which the case was tried, in which petition he shall plainly and distinctly set forth the errors complained of." The statute further provides as follows:

> *On the filing of the petition in the office of the clerk of the superior court, with the sanction of the appropriate judge endorsed thereon*, together with the bond or affidavit, as provided in Code Section 5-4-5, *it shall be the duty of the clerk to issue a writ of certiorari*, directed to the tribunal or person whose decision or judgment is the subject matter of complaint, requiring the tribunal or person to certify and send up all

---

[11] *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011).

[12] *Holcomb v. Long*, 329 Ga. App. 515, 518 (1) (765 SE2d 687) (2014) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

the proceedings in the case to the superior court, as directed in the writ of certiorari.[13]

Giving further direction, OCGA § 5-4-6 (a) and (b) provide as follows:

(a) *All writs* of certiorari *shall be applied for* within 30 days after the final determination of the case in which the error is alleged to have been committed. Applications made after 30 days are not timely and shall be dismissed by the court.

(b) The certiorari petition *and* writ shall be filed in the clerk's office within a reasonable time after sanction by the superior court judge; and a copy shall be served on the respondent, within five days after such filing, by the sheriff or his deputy or by the petitioner or his attorney. A copy of the petition *and* writ shall also be served on the opposite party or his counsel or other legal representative, in person or by mail; and service shall be shown by acknowledgment or by certificate of the counsel or person perfecting the service.[14]

Looking to the plain and unambiguous language of these two statutes, OCGA § 5-4-3 and OCGA § 5-4-6, it is evident that the petition for certiorari filed by the dissatisfied party, the writ of certiorari issued by the superior court clerk, and the sanction of the writ by the superior court judge are separate entities, as we and our

---

[13] OCGA § 5-4-3 (emphasis supplied).

[14] (Emphasis supplied).

Supreme Court have indicated in prior cases.[15] Additionally, in further contradiction of Traton Homes' contentions, neither the order sanctioning the petition nor the summonses issued in this case satisfied the requirements of a writ of certiorari which, according to statute, must be "directed to the tribunal or person whose decision or judgment is the subject matter of complaint, requiring the tribunal or person to certify and send up all the proceedings in the case to the superior court, as directed in the

---

[15] *See Asher v. Cope*, 95 Ga. 31, 31 (22 SE 41) (1894) ("It appears from the record that the petition was presented to the judge of the superior court; that it was sanctioned, and the writ of certiorari ordered to issue . . . , and that the writ of certiorari issued regularly . . . ; that the order sanctioning the issue of the writ was entered upon, and the writ itself attached to, the petition for certiorari[.]"); *Goldstein v. Smith*, 141 Ga. App. 493, 494 (2) (233 SE2d 864) (1977) ("[OCGA § 5-4-3] . . . requires the petition to be filed in the office of the clerk of the superior court, with the sanction of the judge of the circuit endorsed thereon, in order for the clerk to issue the writ directed to the inferior judicatory thereby requiring that court to certify and send up all the proceedings in the cause to the superior court as directed in the writ of certiorari."); *Smith v. City of Washington*, 4 Ga. App. 514, 514 (61 SE 923) (1908) ("The petition for certiorari was duly sanctioned by the judge of the superior court, and the petition, with the sanction of the judge indorsed thereon, was delivered by [appellant's] attorney to the clerk of the superior court . . . . It appears from the record that the clerk of the superior court promptly and properly issued the writ directed to the mayor of the city of Washington, bearing teste in the name of the judge of the superior court of the circuit, entered the case upon the docket, copied the petition and the sanction of the judge, attached the writ of certiorari, and kept the same in his office until April 29th, when they were handed by him to the petitioner's counsel upon counsel's request to be furnished with papers in those cases which he represented.").

writ of certiorari."[16] Indeed, the order directed that (1) the petition for certiorari be filed in the clerk's office within a reasonable time after sanction, (2) that the petition be served on the respondent within five days of filing, (3) that a copy of "the petition *and writ* . . . also be served on the opposite party,"[17] and (4) that the respondent answer the writ within thirty days of service of the "petition *and writ* upon the [r]espondent"[18] in accordance with OCGA § 5-4-6. And the summonses directed the Board and its members to "serve upon plaintiff's attorney" an "answer to the complaint which is herewith served upon you" and warned that the failure to do so could result in a default judgment. Thus, neither the order nor the summonses satisfied the dictates of the statute as applied to the contents of a writ.[19]

Accordingly, although the Board was served with a copy of the petition for certiorari, a sanction of the writ by the superior court, and summonses, there was a

---

[16] OCGA § 5-4-3.

[17] (Emphasis supplied).

[18] (Emphasis supplied).

[19] *See* OCGA § 5-4-3 (providing that a writ of certiorari be "directed to the tribunal or person whose decision or judgment is the subject matter of complaint, requiring the tribunal or person to certify and send up all the proceedings in the case to the superior court, as directed in the writ of certiorari").

failure to comply with the express terms of OCGA § 5-4-3 and OCGA § 5-4-6 because no *writ* has been issued and served.[20] And while it is true that it was the clerk's duty to *issue* the writ, it is also separately the petitioner or his counsel's duty to ensure that a writ is served.[21] Thus, Traton Homes cannot completely divorce itself

---

[20] *See Neal v. Neal*, 122 Ga. 804, 804 (1) (50 SE 929) (1905) ("[T]he writ of certiorari itself is issued by the clerk of the superior court under the sanction of the judge[.]"); *Gregory v. Daniel*, 93 Ga. 795, 796 (2) (20 SE 656) (1894) ("The writ of certiorari ought to have been issued, and the case made returnable to the December term, 1892, of Burke superior court, but the clerk failed to issue the writ. At the term last mentioned the court passed an order directing the writ of certiorari to issue, and that the same stand for trial at the next term of the court. The writ was accordingly issued . . . . "); *see also Cobb County v. Herren*, 230 Ga. App. 482, 484 (496 SE2d 558) (1998) ("Absent the sanction, the clerk of the superior court has no authority to either file the application for certiorari or issue the writ. Sanctioning is an integral part of the application for certiorari and without it, the certiorari process cannot move forward." (citation omitted)); *Bellew v. State Highway Dep't*, 127 Ga. App. 301, 302 (1) (193 SE2d 202) ("[An applicant] may file [an application for certiorari] with the clerk of superior court, after sanction by the judge, and the clerk will thereupon be required to issue a writ of certiorari. But, absent sanction, the clerk has no authority to file the application or issue the writ of certiorari." (citation omitted)); *McElhannon v. State*, 112 Ga. 221, 224 (37 SE 402) (1900) ("It makes no practical difference, we think, whether the judge of the superior court issues the writ of certiorari himself, or sanctions the petition and orders the clerk to issue it. Certainly the issuing of the writ by the judge necessarily involves a sanction of the petition.").

[21] *See* OCGA § 5-4-6 (b) ("The certiorari petition and writ shall be filed in the clerk's office within a reasonable time after sanction by the superior court judge; and a copy shall be served on the respondent, within five days after such filing, by the sheriff or his deputy or by the petitioner or his attorney. A copy of the petition and writ shall also be served on the opposite party or his counsel or other legal representative, in person or by mail; and service shall be shown by acknowledgment

from the failure that occurred in this case.[22] Accordingly, the superior court erred in

denying the Board's motion to dismiss when there was a complete failure to even

*issue* a writ of certiorari, let alone serve same upon the respondent, the Board.[23] And

---

or by certificate of the counsel or person perfecting the service."); *Smith*, 4 Ga. App. at 514 (2) ("The clerk of the superior court performed his full duty in the premises as clerk when he issued the writ, attached it to the petition, made a copy of the petition and the writ, and docketed the case. Furthermore, it was the duty of the petitioner or of his counsel to see that the mayor was served with the copy of the petition and with the writ of certiorari.").

[22] *See Fisher v. City of Atlanta*, 212 Ga. App. 635, 635-36 (442 SE2d 762) (1994) ("It cannot readily be determined why § 5-4-6 (b) requires 'the respondent' (the inferior judicatory) to be served, since OCGA § 5-4-3 fully and expressly provides for 'service' by the clerk of court of the writ of certiorari on the inferior judicatory . . . . Even though the [respondent] received service of the writ from the superior court clerk under OCGA § 5-4-3, we must hold that the petition was properly dismissed for lack of service under § 5-4-6 (b)."); *cf. Johnston v. Ga. Public Serv. Comm'n*, 209 Ga. App. 224, 225 (433 SE2d 65) (1993) ("Considering the fact that the mistaken designation [of a nonexistent transcript] in the notice of appeal could have been easily discovered if some attention had been paid to the matter, and that the earliest inquiry about the status of the appeal did not occur until several months after the notice of appeal had been filed, the trial court was also authorized to find that the delay was inexcusable and caused by the appellants.").

[23] *See Fisher*, 212 Ga. App. at 635-36 ("Even though the [respondent] received service of the writ from the superior court clerk under OCGA § 5-4-3, we must hold that the petition was properly dismissed for lack of service under § 5-4-6 (b)."); *cf. Bass v. City of Milledgeville*, 121 Ga. 151, 151 (121 SE 919) (1904) ("[T]he failure to deliver the writ and a copy of the petition to the officer whose decision is sought to be reviewed . . . will not . . . result in a dismissal of the proceeding [when] it is shown that the failure was not due to the fault or negligence of the plaintiff in certiorari. [When] this appears, an order will be granted allowing further time within

even if we assume, without deciding, that dismissal *with prejudice* was not required by this error,[24] the failure to comply with the certiorari requirements as to the opposite party, as discussed in Division 2 *infra*, *did* require dismissal with prejudice. Consequently, we turn to this second enumerated error.

2. The Board next argues that the trial court erred in denying its motion to dismiss the petition for certiorari when Traton Homes failed to name the City of Sandy Springs as the opposite party, further failing to comply with the mandatory requirements of OCGA § 5-4-6 (b). Once again, we agree.

Looking to the statute at issue, OCGA § 5-4-6 (b) plainly provides not only that a copy of the certiorari petition and writ be served upon the *respondent* within five days of filing same in the clerk's office, but *additionally* that "[a] copy of the petition and writ *shall also be served on the opposite party* or his counsel or other

---

which to serve.").

[24] *Cf. City of Dunwoody v. Discovery Practice Mgmt., Inc.*, 338 Ga. App. 135, 136-37 (1) (789 SE2d 386) (2016) (discussing writ and petition as two separate items, and noting that "the failure to deliver, within the time required by the statute, *the petition and writ* to the officer whose decision is under review, will not render the proceeding void, but that it is a mere irregularity, which can be cured either by a waiver by the officer himself, evidenced by the filing of his answer, or by an extension of time by the judge of the superior court" (punctuation omitted) (emphasis supplied)).

12

legal representative, in person or by mail; and service shall be shown by acknowledgment or by certificate of the counsel or person perfecting the service."[25]

As we have previously explained, "the judicatory body whose decision is appealed is the 'respondent' on whom service is required"[26] or, in other words, the "respondent" is "the judicatory body *in* the dispute,"[27] while the "opposite party" is the "party *to* a dispute."[28] The judicatory body/respondent and the opposite party/party to a dispute are, thus, "separate entities with possibly conflicting interests."[29] And because the Board (as respondent) and the City (as the proper opposite party) are two separate entities with possibly conflicting interests, we reject Traton Homes's argument that service of the original petition upon the city attorney was sufficient service upon the City as an opposite party when the City was not

---

[25] (Emphasis supplied).

[26] *Fisher*, 212 Ga. App. at 635.

[27] *Id.* at 636 (emphasis supplied); *see also Hudson*, 225 Ga. App. at 456 (2) (noting that "the respondent" is "[t]he tribunal whose decision is being reviewed").

[28] *Fisher*, 212 Ga. App. at 636 (emphasis supplied).

[29] *Id.*; *see also Hudson*, 225 Ga. App. at 456 (2) ("[T]he respondent, is not, however, the 'opposite party' referred to in OCGA § 5-4-6 and also required to be served.").

named as the opposite party—only the Board and its members were named in the original petition.[30]

To that end, our Supreme Court long ago established that "[f]ailure to serve the opposite party with notice of the sanction and of the time and place of hearing renders nugatory and void that which had been commenced as a good suit, but had never been

---

[30] *See Fisher*, 212 Ga. App. at 636 ("Appellant . . . contends service of the petition on the City of Atlanta was service on the City of Atlanta Civil Service Board, but we decline to so hold as a matter of law. The superior court apparently found that the attorney for the City of Atlanta did not accept or waive service on the Civil Service Board as 'respondent.' Under the circumstances, these are separate entities with possibly conflicting interests, as one is a party to a dispute and the other is the judicatory body in the dispute."); *see also id.* at 636 (on motion for reconsideration) ("[Because] appellant had not named the respondent (Civil Service Board) as a party on December 7 when he served the City of Atlanta (employer) and [because] we hold that service on the City of Atlanta (employer) is not service on the Civil Service Board ('respondent'/tribunal) as a matter of law, it logically follows that the . . . service on the City of Atlanta (employer) could not have been intended by appellant or accepted by the City of Atlanta (employer) as service on the Civil Service Board (respondent)."); *cf. Pope v. Bd. of Comm'r of Fulton Cnty.*, 248 Ga. App. 201, 202 (2) (546 SE2d 333) (2001) ("*Fisher* was correctly decided, as the Civil Service Board did not initiate or prosecute the proceedings before it, but sat solely as a judicial decision-maker in a dispute between the City and a civil servant. In this case, however, the Board of Commissioners performs a more expansive role. . . . In such circumstances, it is the Board of Commissioners, as the governing authority, which is the proper defendant in certiorari. Here, . . . unlike *Fisher*, the superior court was petitioned to review a quasi-judicial decision of the Board of Commissioners of Fulton County under OCGA § 48-5-295 (b).").

14

completed and perfected by service."[31] And when there is no such service upon the opposite party, "there is no suit."[32] Indeed, as our Supreme Court recognized with regard to certiorari proceedings as far back as 1904, "[w]ithout proper service the court can have no jurisdiction of the case."[33] Additionally, although OCGA § 5-4-10 provides that "[c]ertiorari proceedings [are] amendable at any stage, as to matters of form or substance, as to the petition, bond, answer, and traverse . . . ," we have previously held that "a failure to serve the opposite party is not a defect which can be cured by amendment . . . ."[34]

---

[31] *Bass*, 121 Ga. at 151; *accord Hudson*, 225 Ga. App. at 456 (2).

[32] *Bass*, 121 Ga. at 151; *accord Hudson*, 225 Ga. App. at 456 (2); *see O'Keefe v. Cotton*, 102 Ga. 516, 516 (27 SE 663) (1897) (syllabus by the court) ("Notice to the opposite party of the sanction of a writ of certiorari, and of the time and place of hearing, at least [ten] days before the sitting of the court to which the same shall be returnable, being indispensable in the prosecution of a petition for certiorari, a failure to give such notice renders the entire proceeding void[.]"); *Franke v. May*, 86 Ga. 659, 659 (12 SE 1068) (1891) ("[T]he statute requires written notice, and doubtless it means what it says. . . . The court committed no error in dismissing the certiorari at the hearing, because the statutory notice had not been given. For the lack of such notice, there was no proper case pending in the court."); *see also Hudson*, 225 Ga. App. at 456 (1) ("It is appropriate for the court, without a motion from the party improperly served, to consider whether the petition and writ are properly before it.").

[33] *Jones v. Gill*, 121 Ga. 93, 97 (48 SE 688) (1904).

[34] *Hudson*, 225 Ga. App. at 456 (2). *But cf. Jones*, 121 Ga. at 97 ("If there *has* been proper service, the plaintiff in certiorari should be allowed to amend his return

Accordingly, because Traton Homes failed to name the City as an opposite party and, likewise, failed to serve the City with a copy of the petition *and* with a copy of the writ (which, as explained in Division 1 *supra*, was never even issued) in the time required by statute, the trial court erred in denying the Board's motion to dismiss. And that motion should have been granted with prejudice.[35]

For all these reasons, we reverse.

*Judgment reversed. Ray and Self, JJ., concur*.

---

so as to properly show that fact." (emphasis supplied)); *Pope*, 248 Ga. App. at 291, 201-02 (1) (holding that, although case was improperly dismissed for failure to name the County as the opposite party (when County was *not* the opposite party and, thus was neither required to be named nor entitled to service), petitioner was properly permitted amendment to name Board of Commissioners as the opposite party when, under specific facts of the case and separately applicable statutory provisions, Board was *both* the respondent *and* the opposite party, and Board had already previously been named as the respondent and had been timely served as same).

[35] *See Hipp v. City of East Point*, 105 Ga. App. 775, 776 (125 SE2d 672) (1962) ("[T]he service upon the opposite party should '[a]lso' be made within five days after the filing of such writ in the clerk's office. No service, or written waiver, appears in the record and the judgments[ ] of the superior court dismissing the writ of certiorari and denying the motion to reinstate such writ of certiorari must be [a]ffirmed.").

16